IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHEILA D. HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:14CV134 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Sheila D. Hill, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff filed her application for Disability Insurance Benefits on September 20, 2010, alleging a disability onset date of September 25, 2005. (Tr. at 173-74.)[1] Her application was denied initially and upon reconsideration. (Tr. at 91-134.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 144-45.) On June 28, 2012, Plaintiff appeared and testified at the subsequent hearing,

---

[1] Transcript citations refer to the Sealed Administrative Transcript of Record [Doc. #8].

accompanied by her attorney. (Tr. at 55). The ALJ ultimately issued a decision finding that Plaintiff was not disabled under the meaning of the Act (Tr. at 62), and on December 16, 2013, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-7).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of

the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the

---

[4] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: back pain secondary to degenerative disc disease, most significant at L4-L5; thyroid disorder; gout; lumbago; and bilateral knee pain secondary to tricompartmental changes. (Tr. at 57.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 57-58.) Accordingly, the ALJ assessed Plaintiff's RFC and found her capable of performing light work with further restrictions to occasional climbing of ladders, ropes, scaffolds, ramps and stairs, frequent balancing, and occasional kneeling and crouching. (Tr. at 58.) At step four, the ALJ found that Plaintiff's past relevant work as a Cashier II did not exceed her RFC. Alternatively, the ALJ found at step five that Plaintiff's additional limitations "have very little or no effect on the unskilled light occupational base." The ALJ therefore applied the Medical-Vocational Guidelines ("the grids") contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix

5

Case 1:14-cv-00134-NCT-JEP   Document 19   Filed 07/29/15   Page 5 of 11

2, and determined that "a finding of 'not disabled' [was] directed by Medical-Vocational Rule 202.21." (Tr. at 61-62.)

Plaintiff now challenges the ALJ's vocational findings at steps four and five of the sequential analysis. She first argues that the position of Cashier II, as identified by the ALJ at step four, did not meet the Act's definition of past relevant work. Plaintiff further contends that the additional limitations set out in the RFC substantially erode the occupational base of light work and place the step five determination in this case outside the scope of the grids.

    A.    Past Relevant Work

At step four, the ALJ must determine whether the claimant's impairments prevented her from performing her past relevant work. 20 C.F.R. § 404.1520(e). Significantly, past work experience is only considered "relevant" when "it was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a); see also Social Security Ruling ("SSR") 82–61, 1982 WL 31387 at *1 (1982).

Here, the ALJ found at step one of the sequential analysis that Plaintiff had not engaged in substantial gainful activity, or "SGA," between September 25, 2005 and June 30, 2011. (Tr. at 57.) The ALJ specifically noted that Plaintiff had earnings after April 2006, but those earnings "did not rise to the level of substantial gainful activity." (Tr. at 57.) However, the ALJ then found at step four that Plaintiff had worked as a Cashier II between late 2007 and September 2008, and that her work as a Cashier II qualified as past relevant work. (Tr. at 60-61.) The decision offers no explanation for this internal inconsistency.

6

Indeed, an administrative reviewer noted that Plaintiff was working above SGA until April 2006, but also noted that Plaintiff "had two subsequent attempts at employment that were either below SGA" or were unsuccessful work attempts between April 2006 and September 2010. (Tr. at 196.) Thus, it does not appear that Plaintiff's work in 2007 and 2008 would qualify as past relevant work, and the ALJ does not provide a basis for her inconsistent findings in this regard.

Nevertheless, it appears that the ALJ's error in this regard could be viewed as a harmless error, given that Plaintiff actually did have past relevant work as a cashier prior to her alleged onset date and within the past 15 years,[6] and given that during the hearing before the ALJ, Plaintiff affirmed that her earlier work as a cashier was "the same type of work that [she] did in 2008." (Tr. at 88-89.) Specifically, Plaintiff reported that she worked as a cashier at a grocery store in 2008, and also reported that she worked as a cashier at a grocery store from 1998-1999 and at an Eagles Food Mart convenience store from 2000-2001 (Tr. at 202, 211, 257, 263, 278), as also reflected in her earning records (Tr. at 181-83.) Plaintiff reported that in these positions, she ran the cash register and made sure the front of the store was clean. (Tr. at 277-78.) During her testimony before the ALJ, she affirmed that her work as a cashier at the convenience store in 2000-2001 was "the same type of work that [she] did in 2008" and that she "just stood behind a cash register." (Tr. at 89.) In her job descriptions, Plaintiff described the cashier positions from 2008 and from 1998-2001 similarly, noting that the positions required her to stand at the cash register all day and lift groceries, but required

---

[6] The regulations provide for consideration of work the claimant did within 15 years of either the date of the disability decision "or when the disability insured status requirement was met, if earlier." 20 C.F.R. 404.1520(e); see also Williams v. Colvin, No. 1:13CV71, 2015 WL 540124 (W.D. Va. Feb. 10, 2015) ("In DIB cases, the 15–year period, relevant at steps four and five, runs from the date that a claimant's insured status expired."). In this case, Plaintiff's date last insured was June 30, 2011.

no climbing, and very little kneeling or crouching. (Tr. at 211, 212, 215, 217, 218). For the cashier positions in 2000-2001, Plaintiff noted that the positions involved no lifting over 10 pounds. (Tr. at 215, 217.) In the ALJ's decision, the ALJ compared Plaintiff's RFC with the demands of her work as a cashier, and concluded that Plaintiff "was able to perform it as actually performed." (Tr. at 61.) The ALJ noted that "[t]he Cashier II position is light level work that does not require postural activities that are in excess of the residual functional capacity" and Plaintiff therefore could "perform her past relevant work as a Cashier II." Having considered the record presented, the Court notes that there does not appear to be any dispute that Plaintiff's employment as a cashier from 1998-2001 qualified as past relevant work, and that it was the same type of work as the cashier position in 2008. The ALJ heard Plaintiff's testimony describing her work as a cashier as actually performed, which was the same for both time periods. In the circumstances, the erroneous reference to Plaintiff's work as a cashier in 2008, rather than her earlier work as a cashier from 1998-2001, appears to be a harmless error. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); see also Morgan v. Barnhart, 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished) (applying harmless error doctrine in context of Social Security case); Ngarurih v. Ashcroft, 371 F.3d 182, 191 n.8 (4th Cir. 2004) ("While the general rule is that 'an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained,' reversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of the decision

8

Case 1:14-cv-00134-NCT-JEP   Document 19   Filed 07/29/15   Page 8 of 11

reached'" (internal quotations omitted)). Moreover, any error at step four is ultimately rendered harmless in any event in light of the ALJ's alternative finding at step five, as set out below.

B. Application of the Grids

At step five of the sequential analysis, the government must prove in one of two ways that a claimant remains able to perform other jobs available in the community. Where a plaintiff suffers from purely exertional limitations,[7] the ALJ may apply the grids to establish that claimant's vocational ability. See McLain v. Schweiker, 715 F.2d 866, 870 n.1 (4th Cir. 1983). In other words, if a plaintiff can perform the full range of work within one of the exertional categories defined by 20 C.F.R. § 404.1567, i.e., sedentary, light, medium, heavy, or very heavy, the Fourth Circuit has held that the grids adequately encompass the plaintiff's ability to perform basic work activities. See Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985). If, on the other hand, the claimant suffers from significant nonexertional limitations,[8] the grids are not determinative, and the ALJ must consider vocational expert testimony. McLain, 715 F.2d at 870 n.1.

However, not every nonexertional limitation is significant; "certain additional nonexertional limitations may have very little effect on the range of work remaining that an individual can perform, . . . because relatively few jobs in the national economy require these skills" at the given exertional level. Sherby v. Astrue, 767 F. Supp. 2d 592, 597 (D.S.C.

---

[7] Exertional limitations "affect only [a claimant's] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b).

[8] Nonexertional limitations affect a claimant's ability to meet the other demands of job and include mental limitations, pain limitations, and physical limitations not included in the seven strength demands.

9

2010).  "What is a nonexertional and extremely rare factor in one range of work (e.g., crawling in sedentary work) may become an important element in arduous work like coal mining."  SSR 85-15, 1985 WL 56857, at *2.  Therefore, where a claimant's RFC contains a combination of exertional and nonexertional limitations, Social Security Rulings 83-14, 85-15, and 83-12 provide guidance in evaluating whether the limitations substantially erode the occupational base for a given work level.  In other words, the Rulings help clarify which limitations take a claimant's vocational abilities outside the scope of the grids.

Here, the RFC specifies that Plaintiff can perform light work with the following additional limitations:  occasional climbing of ladders, ropes, scaffolds, ramps and stairs; frequent balancing; and occasional kneeling and crouching.  (Tr. at 58.)  The ALJ then concluded that Plaintiff's "additional limitations had little or no effect on the occupational base of unskilled light work" at step five of the sequential analysis, specifically relying on Social Security Ruling 83-14.  In light of the relevant Social Security Rulings, the Court finds that substantial evidence supports the ALJ's determination.  Significantly, Ruling 83-14 notes that "[r]elatively few jobs in the national economy require ascending or descending ladders and scaffolding."  Likewise, Ruling 83-14 further notes that "to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch."  Ruling 83-14 also specifically provides that the "inability to ascend or descend scaffolding, poles, and ropes" is among the "restrictions which have very little or no effect on the unskilled light occupational base."  SSR 83-14, 1983 WL 31254, at *5.  In addition, SSR 85-15 notes that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of

work." SSR 85-15, 1985 WL 56857, at *6. Similarly, SSR 85-15 explains that kneeling "is a relatively rare activity even in arduous work" and that limitations on the ability to kneel are "of little significance in the broad world of work." 1985 WL 56857 at *7. This Ruling also notes that, if a claimant can crouch occasionally, "the sedentary and light occupational base is virtually intact." Id. Multiple other district courts in this circuit have relied on these Rulings in upholding similar determinations. See, e.g., Wills v. Colvin, No. CIV. TMD 12-2085, 2014 WL 3499233 (D. Md. July 14, 2014); Booker v. Commissioner, No. CIV. SAG-13-315, 2013 WL 5595420 (D. Md. Oct. 10, 2013); Carey v. Commissioner, No. CIV. SAG-12-3583, 2013 WL 4804734 (D. Md. Sept. 6, 2013); Straight v. Astrue, No. 1:10CV33, 2011 WL 1157865 (N.D.W. Va. March 28, 2011); Wright v. Astrue, No. 5:09-CV-546-FL, 2010 WL 5056020 (E.D.N.C. Sept. 16, 2010). In short, the ALJ did not err in concluding that Plaintiff's "additional limitations had little or no effect on the occupational base of unskilled light work" at step five of the sequential analysis, and the ALJ's reliance on the grids at step five does not require remand. (Tr. at 62.)

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] be DENIED, that Defendant's First Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 29th day of July, 2015.

    /s/ Joi Elizabeth Peake
United States Magistrate Judge